*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DESMOND DUANE-MARK LEFLORE,

Defendant-Appellant.

UNPUBLISHED
August 10, 2026
3:18 PM

No. 374198
Ionia Circuit Court
LC No. 2024-019032-FC

Before: BOONSTRA, P.J., and YOUNG and KOROBKIN, JJ.

PER CURIAM.

Defendant, Desmond Duane-Mark LeFlore, appeals by right his bench-trial conviction for gross indecency, MCL 750.338b, as a fourth habitual offender, MCL 769.12. Defendant contends that the prosecution presented constitutionally insufficient evidence to support the conviction and that his trial counsel was ineffective for failing to present a witness. For the reasons stated in this opinion, we disagree with defendant and therefore affirm.

## I. BACKGROUND AND FACTS

The incident for which defendant was charged occurred on July 23, 2023 in the visiting room at the Ionia Correctional Facility in Ionia County. At the bench trial, Officer Kathryn Franz, a Michigan Department of Corrections (MDOC) employee who was in the facility's electronic control monitoring room, testified that she observed defendant on live video sitting closely to a woman who had her left hand inside defendant's pants while "the front of his pants was moving up and down away from his body." The incident went on for 8 to 10 minutes. The video footage and a still from the footage was admitted at trial. During the incident, other people were present in the visiting room and the couple was not in a private or partitioned area. Officer Franz concluded that the female visitor was giving defendant a "hand job" and contacted other MDOC staff, who terminated the visit. Officer Franz did not observe defendant try to stop the visitor or touch her in a sexual manner and was unable to observe defendant's genitalia or its outline. She also testified that inmates cannot consent to inappropriate touching under MDOC policy and that the only permitted physical contact during visits is holding hands or putting an arm over another person's shoulder.

-1-

Defendant's girlfriend, Tia Hernandez, whom he had been dating for around two years, testified that she put her hand down the front of defendant's pants into his pocket, which had a hole, and touched his penis. When asked whether she had defendant's consent to do so, Hernandez answered, "[y]es." Hernandez explained that she stroked defendant's penis for a couple minutes, during which time defendant did not ask her to stop.[1] Hernandez denied that defendant touched her or himself in a sexual way.

After Officer Franz's and Hernandez's testimony, the prosecution rested. The defense then moved for directed verdict on the grounds that the prosecution had not proven that defendant masturbated himself or someone else, that the morals of the public were offended, or that defendant was a party to the commission of the act. The trial court denied the motion.

The defense then called defendant, who did not deny that the incident occurred. Defendant explained that Hernandez touched his covered groin area and penis with a layer of cloth in between her hand and his penis. He was also strip-searched after the incident and no altered clothing was found. Defendant did not know that Hernandez was going to put her hand in his pocket and did not ask her to do so. He did not stop her because he "didn't think we was doing nothing wrong or nothing." When Hernandez touched him, defendant, who had been in MDOC custody for ten or eleven years, experienced "shock and excitement."

Following trial, the trial court made findings of fact in accordance with MCR 6.403 and found defendant guilty as charged. Defendant now appeals.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the prosecution presented insufficient evidence for the trial court to find beyond a reasonable doubt that he committed gross indecency. We disagree.

An appellate court reviews de novo a trial court's determination on a motion for directed verdict that there was sufficient evidence to support a conviction. *People v Prude*, 513 Mich 377, 384; 15 NW3d 249 (2024). "We view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices" in support of the verdict. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015) (quotation marks and citation omitted).

"In a bench trial, factual findings are sufficient as long as it appears that the trial court was aware of the issues in the case and correctly applied the law." *People v Parkinson*, 348 Mich App 565, 574; 19 NW3d 174 (2023) (cleaned up). And " '[t]he court need not make specific findings

---

[1] Hernandez was separately charged for her actions and pleaded guilty to gross indecency, for which she was sentenced to probation under the Holmes Youthful Trainee Act, MCL 762.11 *et seq*.

of fact regarding each element of the crime' so long as it applies the law correctly and sufficiently articulates its findings to satisfy MCR 2.517 and MCR 6.403." *Id.* (citation omitted). We review the interpretation and application of statutes de novo. *Id.*

Defendant was convicted under MCL 750.338b, which provides in pertinent part that:

> Any male person who, in public or in private, commits or is a party to the commission of any act of gross indecency with a female person shall be guilty of a felony, punishable as provided in this section. Any female person who, in public or in private, commits or is a party to the commission of any act of gross indecency with a male person shall be guilty of a felony punishable as provided in this section. Any person who procures or attempts to procure the commission of any act of gross indecency by and between any male person and any female person shall be guilty of a felony punishable as provided in this section.

Michigan has three gross indecency statutes; MCL 750.338b, quoted above, as well as MCL 750.338, which prohibits gross indecency between male persons, and MCL 750.338a, which prohibits gross indecency between female persons. Together, these statutes penalize acts of gross indecency regardless of the gender of the participants. See MCL 750.338, MCL 750.338a, MCL 750.338b. But "gross indecency" itself is not defined by statute. Instead, we are guided by a somewhat meandering path of caselaw. See *People v Bono*, 249 Mich App 115, 119; 641 NW2d 278 (2002).

In *People v Hicks*, 98 Mich 86, 90; 56 NW 1102 (1893), our Supreme Court applied a "common sense of the community" standard, also described as the "common sense of society" standard, in a case involving a statute that criminalized assaulting and "taking indecent and improper liberties" with a child. That is, the Court observed that

> "no particular definition is given by the statute of what constitutes this crime. The indelicacy of the subject forbids it, and it does not require the court to state what particular conduct will constitute the offense. The common sense of the community, as well as the sense of decency, propriety, and morality which most people entertain, is sufficient to apply the statute to each particular case, and point out what particular conduct is rendered criminal by it." [*Id.*, quoting *State v Millard*, 18 Vt 574, 577; 46 Am Dec 170 (1846).]

This rationale was later extended to cases interpreting gross indecency statutes. In *People v Carey*, 217 Mich 601; 187 NW 261 (1922), the Supreme Court interpreted the nearly identical predecessor to MCL 750.388 which likewise prohibited acts of gross indecency between male persons. There, the Supreme Court, quoting and relying on the "common sense of the community" standard from *Hicks*, 98 Mich at 90, held that the initial information that charged the defendant with gross indecency, but did not detail the particulars of the alleged act, was sufficient because "the language of the statute informed [the] defendant of the crime for which he was to be tried" and "[t]he gross indecency of the subject" forbid describing the charged act. *Carey*, 217 Mich at 602-603. And when, several decades later, this Court encountered a challenge to a statute regarding gross indecency between male persons as unconstitutionally vague in *People v Dexter*, 6 Mich App 247, 253; 148 NW2d 915 (1967), we rejected it, relying in part on *Hicks* and *Carey*. The *Dexter* Court

-3-

reasoned that the statute penalizes "conduct that is of such a character that the common sense of society regards it as indecent and improper," rendering it "not vague or bereft of guidelines." *Id.* (quotation marks and citation omitted).

Doubt was cast upon the *Hicks-Carey-Dexter* "common sense of society" standard in *People v Howell*, 396 Mich 16; 238 NW2d 148 (1976), which addressed another vagueness challenge to the gross indecency statutes. A portion of the opinion, authored by Justice LEVIN, rejected the "common sense of society" standard and advocated for a construction of the gross indecency statutes that would "prohibit oral and manual sexual acts committed without consent or with a person under the age of consent or any ultimate sex act committed in public." *Id.* at 22-24. This view, however, did not command a majority of the Court and thus that section of the opinion was not binding.[2] See *People v Anderson*, 389 Mich 155, 170-171; 205 NW2d 461 (1973).

Following *Howell*, there was a split in authority in this Court as some panels continued following the *Hicks-Carey-Dexter* standard and others followed the standard proposed by Justice LEVIN in *Howell*. See *People v Austin*, 185 Mich App 334, 338; 460 NW2d 607 (1990) (following the *Hicks-Carey-Dexter* standard); *People v Lynch*, 179 Mich App 63, 66-68; 445 NW2d 803 (1989) (following the Justice LEVIN *Howell* standard); *People v Lino*, 190 Mich App 715; 476 NW2d 654 (1991) (same). This rift led to the convening of a conflict panel, which in turn clarified that whether an act constitutes gross indecency under MCL 750.338 should be evaluated by the "common sense of society" standard as mandated by *Carey*. *People v Brashier*, 197 Mich App 672, 674; 496 NW2d 385 (1992).[3]

But clarity was short-lived, as our Supreme Court issued a consolidated memorandum opinion addressing our decisions in *Brashier* and *Lino* in *People v Lino*, 447 Mich 567; 527 NW2d 434 (1994). The *Lino* Court explicitly rejected the "common sense of community" standard as the definition for gross indecency. *Id.* at 570-571.[4] But, as in *Howell*, no alternative standard garnered a majority. Instead, the opinion was fractured with separate opinions that respectively advocated for the *Howell* standard, *id.* at 578-603 (LEVIN, J., concurring), a standard that would criminalize only oral sexual conduct, *id.* at 603-618 (BOYLE, J., concurring), and the *Carey* standard, *id.* at 618-623 (RILEY, J., concurring).[5] As such, *Lino* "le[ft] us with a definitive statement regarding

---

[2] Instead, the vagueness challenge was rejected on the basis that although the term "act of gross indecency" does not give notice of the prohibited conduct, caselaw had long applied the gross indecency statutes to the behaviors with which the defendants were charged such that they were on notice that such conduct was proscribed. *Howell*, 396 Mich at 21-22.

[3] Three judges concurred, expressing their agreement that *Howell* did not overrule *Carey*'s definition of gross indecency but opining that the *Carey* standard was "wrongly decided or no longer viable." *Id.* at 679-680 (CONNOR, BRENNAN, and NEFF, JJ., concurring).

[4] Thus, defendant's argument that the "common sense of society" standard has not been overruled and should have been applied to the offense in this case lacks merit.

[5] The *Lino* Court also rejected the defendants' vagueness challenge to MCL 750.338, looking at each individual set of facts. As for defendant Lino, their as-applied vagueness challenge failed because caselaw clearly held that public fellatio was penalized under the statute. *Lino*, 447 Mich

how *not* to determine whether an act is grossly indecent, but without a definitive statement regarding which acts *are* grossly indecent." *People v Jones*, 222 Mich App 595, 602; 563 NW2d 719 (1997) (emphasis added.)

The Supreme Court later opined that in light of the "Legislature's adherence to antiquated and obscure terminology[,] [o]ne of the lessons of the *Lino* inquiry is that it is prudent to decide only the case before us, and not attempt to catalog what is permitted and prohibited . . . ." *People v Warren*, 449 Mich 341, 345; 535 NW2d 173 (1995). And as we observed in *Jones*, "[u]ntil the Legislature gives the courts of this state a workable definition of gross indecency, malleable enough to protect, without unlawfully infringing on, the rights of the public, we must decide case by case, as the Supreme Court did in *Lino*, whether an act is grossly indecent." *Id.* at 602.[6] But in the absence of a uniform standard promulgated by our Supreme Court, this Court has set forth some principles that aid the individual inquiry in this case.

In *People v Drake*, 246 Mich App 637; 633 NW2d 469 (2001) , we held that a district court abused its discretion in failing to bind over the defendant on three counts of gross indecency under MCL 750.338b when the defendant had invited minor children to his home and given them money and items for "beating him, spitting on him and his food, and providing him with urine, feces, and used tampons," but did not sexually touch himself or engage in sexual touching with the children. *Id.* at 638-639, 643. Reviewing the caselaw, we observed that "the crime of gross indecency consists of behavior that involves some type of overt sexual activity." *Id*. at 641. But we also observed that the definition is not limited to such overt acts and that "the operative principle is that the activity be sexual in nature." *Id.* at 642. Further, "the acts must be overt in the sense that they are open and perceivable. The motivation for the behavior can be inferred from the totality of the circumstances and should be considered case by case." *Id.*[7]

We have also stated that an "act alleged to be grossly indecent [cannot] be looked at in a vacuum or separated from the factual situation in which it took place." *Jones*, 222 Mich App at 603-604 (holding that the alleged act of sexual intercourse between a husband and wife in a public waiting room at a prison in front of nonconsenting adults and children would, if proven, constitute gross indecency under MCL 750.338b). And, we have explained that Michigan caselaw holds that "public masturbation is a grossly indecent act." *Bono*, 249 Mich App at 123 (holding that the alleged act of a man masturbating another man in a public restroom would, if proven, constitute gross indecency under MCL 750.338).

---

at 576. As for defendant Brashier, his as-applied vagueness challenge failed because he was on notice that "sexual activity involving persons under the age of consent could constitute" gross indecency. *Id.* at 576-578.

[6] We note that after *Lino*, the Supreme Court of the United States later invalidated all state laws that criminalized private sexual conduct between consenting adults. See *Lawrence v Texas*, 539 US 558, 578; 123 S Ct 2472; 156 L Ed 2d 508 (2003). Thus, such acts cannot fall within the definition of gross indecency.

[7] We reject defendant's argument that *Drake* only applies to minor complainants, as its principles are soundly drawn from the body of caselaw on gross indecency. See *id.* at 641-642.

-5-

Turning to the facts of this case, we conclude that the evidence in the prosecution's case-in-chief, viewed in the light most favorable to the prosecution, see *Meissner*, 294 Mich App at 452, is sufficient to support defendant's conviction for gross indecency. The testimony and video evidence showed that Hernandez touched defendant's penis through his clothing and manually stimulated his genitals with her left hand. Hernandez believed that she had defendant's consent to masturbate him and he did not ask her to stop over the course of 8 to 10 minutes. This incident, in which Hernandez masturbated defendant, occurred in a prison waiting room in which other people were present and was not private. Officer Franz, watching a live feed from the prison's electronic monitoring control room, observed Hernandez's hand in defendant's pants while "the front of his pants was moving up and down away from his body," and she concluded that Hernandez was inappropriately touching defendant in violation of prison policy by giving defendant a "hand job."

Thus, there was clear evidence that defendant's genitals were being stimulated by Hernandez, and caselaw establishes that "public masturbation is a grossly indecent act." *Bono*, 249 Mich App at 123. Contrary to defendant's assertions, the fact that Hernandez touched defendant's penis over his clothes through his pocket or that defendant's penis was not exposed does not change the analysis. Although defendant argues that under the circumstances shown at trial, the act was not an "ultimate sex act" under the *Howell* standard, as indicated previously, Justice LEVIN's *Howell* definition for gross indecency that included "an ultimate sex act committed in public," *Howell*, 396 Mich at 22-24, does not have the force of law, see *Anderson*, 389 Mich at 170-171. Thus, defendant's reliance on caselaw applying the *Howell* test is unavailing. For example, defendant cites *People v Emmerich*, 175 Mich App 283, 289; 437 NW2d 30 (1989), which found under the *Howell* test that touching another person's clothed groin with a pocketed hand was not grossly indecent because it was not an "ultimate sexual act." Because there is no question under our caselaw that public masturbation is grossly indecent conduct, see *Bono*, 249 Mich at 123, whether it is properly classified as an "ultimate sexual act" is irrelevant.

Although defendant argues that the act did not occur in plain view and was not readily apparent, there is evidence in the record to the contrary, and we must draw all reasonable inferences and make credibility choices in support of the verdict. See *Bailey*, 310 Mich App at 713. The conduct occurred in a public place, namely, a prison visiting room with others present and without privacy or obstruction. And Officer Franz could readily discern from observing video footage in real time that sexual contact was occurring, as she saw Hernandez's hand moving in a way that demonstrated she was giving defendant a "hand job." Given this context, there was evidence from which a rational trier of fact could determine that the act, which was "sexual in nature," was "overt in the sense that [it was] open and perceivable." *Drake*, 246 Mich App at 641-642.

Defendant next argues that his being present and knowing about the commission of the crime is not enough to convict, because the statute requires that a defendant be "a party to the commission of [an] act of gross indecency . . . ." MCL 750.338b. Put differently, defendant argues that he did not aid or abet Hernandez's actions. Defendant thus posits that being "a party to" the act, *id.*, requires more than one's mere involvement without consent. But assuming without deciding that a defendant's consent is required for a gross indecency conviction, the evidence put forth by the prosecution's case was sufficient to establish that defendant consented to the act and was thus "a party to" it. Indeed, Hernandez believed that defendant consented and he did not ask her to stop, Officer Franz did not observe defendant try to stop Hernandez, and the incident continued for a considerable length of time, 8 to 10 minutes, before the visit was terminated by

prison personnel. Defendant's testimony provided after the motion for directed verdict does not change our analysis, either: defendant testified that he did not ask Hernandez to touch him, but that he did not ask to her stop because he "didn't think we was doing nothing wrong or nothing" and that he experienced "shock and excitement" upon her touch. Drawing reasonable inferences in support of the verdict, see *Bailey*, 310 Mich App at 713, this testimony established that defendant viewed himself as a willing participant in the act and that he was thus "a party to" it, MCL 750.338b.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also contends that his trial counsel rendered ineffective assistance by failing to call as a witness Officer Nicholas Plotnick, who searched defendant after the visit with Hernandez. We disagree.

To establish a claim of ineffective assistance of counsel, "a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016), citing *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052, 80 L Ed 2d 674 (1984). It is presumed that trial counsel was effective, and a defendant must overcome the strong presumption that counsel's performance was sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Whether a defendant has been denied the effective assistance of counsel is a "mixed question of fact and constitutional law." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004) (quotation marks and citation omitted). Factual findings are reviewed for clear error and questions of constitutional law are reviewed de novo. *Id.*

"[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). A substantial defense is one that would have affected the trial's outcome. *People v Daniel*, 207 Mich App 47, 58; 523 NW2d 830 (1994) (citation omitted).

A defendant bears "the burden of establishing the factual predicate for [their] claim of ineffective assistance of counsel[.]" *People v Solloway*, 316 Mich App 174, 189; 891 NW2d 255 (2016) (quotation marks and citation omitted). Generally, when there is no *Ginther*[8] hearing, our review is limited to errors apparent on the record, see *People v Buie (On Remand)*, 298 Mich App 50, 61; 825 NW2d 361 (2012), but we may also consider a defendant's offer of proof to determine whether there is evidence that the witness would have testified favorably at trial, see *People v Pickens*, 446 Mich 298, 327; 521 NW2d 797 (1994).

Defendant argues that trial counsel should have called Officer Plotnick, who would be expected to testify that he did not find any contraband or altered clothing when he strip-searched defendant after the visit. This testimony, defendant claims, would have undermined the trial court's finding that the act was open and perceivable, because no holes were found in defendant's

---

[8] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

clothing to indicate that skin-to-skin contact could have occurred and because the search's purpose was to locate contraband. However, as discussed above, we need not find that there was direct hand-to-genital contact or that defendant's genitals were exposed to hold that the act was grossly indecent under the statute. Instead, the evidence of over-the-clothes masturbation of the nature demonstrated by the evidence was sufficient. Thus, calling Officer Plotnick as a witness would not have made a difference in the trial's outcome. See *Dixon*, 263 Mich App at 398; *Shaw*, 315 Mich App at 672.

Affirmed.

/s/ Mark T. Boonstra
/s/ Adrienne N. Young
/s/ Daniel S. Korobkin